David E. De Lorenzi
Todd M. Nosher
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone No.: (973) 596-4500
Facsimile No.: (973) 596-0545

*Of counsel:*
John W. Kozak
David M. Airan
Leonard Z. Hua
**LEYDIG, VOIT & MAYER**
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601-6731
Telephone No.: 312-616-5600
Facsimile No.: 312-616-5700

*Attorneys for Defendant Molex Incorporated*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEL FUSE INC., BEL FUSE LTD., BEL FUSE (MACAU COMMERCIAL OFFSHORE) LTD., BEL CONNECTOR INC. and BEL TRANSFORMER INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOLEX INCORPORATED, <br><br> Defendant. | Civil Action No.: 1:13-cv-02566-JBS-JS <br><br> *DOCUMENT ELECTRONICALLY FILED* |

**DEFENDANT MOLEX, INC.'S MOTION TO DISMISS**
**<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ............................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................ 2

    A.     Procedural Background ................................................................................. 2

    B.     Bel Fuse's Amended Complaint .................................................................... 3

    C.     The Accused Products .................................................................................. 5

LEGAL STANDARDS ................................................................................................................. 6

    A.     Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) ............................................. 6

    B.     Pleading Direct Infringement Under 35 U.S.C. § 271(a) .......................................... 7

    C.     Pleading Indirect Infringement Under 35 U.S.C. § 271(b) ....................................... 8

    D.     Pleading Contributory Infringement Under 35 U.S.C. § 271(c) .............................. 9

ARGUMENT .............................................................................................................................. 10

    A.     The Complaint Fails to State a Claim of Direct Infringement ............................. 10

    B.     The Complaint Fails to State a Claim of Induced Infringement .......................... 12

    C.     The Complaint Fails to State a Claim of Contributory Infringement .................. 13

**TABLE OF AUTHORITIES**

**Cases**

*Air Vent, Inc. v. Owens Corning Corp.*,
  02:10-CV-01699, 2011 WL 2601043 (W.D. Pa. June 30, 2011) ................................................ 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  1:10cv910 LMB/TRJ, 2013 WL 265602 (E.D. Va. Jan. 22, 2013) ........................................... 8

*Artemi Ltd. v. Safe-Strap Co., Inc.*,
  03-3382(JEI/AMD), 2013 WL 2367874 (D.N.J. May 30, 2013) ............................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................................ 6, 7, 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ....................................................................................... 6, 7

*Ferguson Beauregard/Logic Controls v. Mega Sys.*,
  350 F.3d 1327 (Fed. Cir. 2003) ................................................................................................... 8

*Fuzzysharp Techs. Inc. v. NVIDIA Corp.*,
  12-cv-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ............................................. 9

*Global-Tech Appliances, Inc. v. SEB, S.A.*,
  131 S.Ct. 2060 (2011) ............................................................................................................ 8, 9

*In re Bill of Lading Transmission and Processing Sys. Patent Litigation*,
  681 F.3d 1323 (Fed. Cir. 2012) .............................................................................................. 8, 9

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ................................................................................. 1, 7, 11, 12

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ....................................................................................................... 10

*Medtronic Vascular, Inc. v. Boston Scientific Corp.*,
  348 F. Supp. 2d 316 (D. Del. 2004) ............................................................................................ 8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir.1993) ..................................................................................................... 10

*Pieczenik v. Abbott Labs.*,
  10-2230, 2011 WL 1045347 (D.N.J. Mar. 23, 2011) ................................................................ 8

*Pragmatus AV, LLC v. TangoMe, Inc.*,
  11-1092-LPS, 2013 WL 571798 (D. Del. Feb. 13, 2013) ......................................................... 9

*Prism Techs., LLC v. AT&T Mobility, LLC*,
  8:12CV122, 2012 WL 3867971 (D. Neb. Sept. 6, 2012) .................................................... 7, 11

*Radiation Stabilization Solutions, Inc. v. Varian Medical Sys., Inc.*,
  11 C 7701, 2012 WL 3757489 (N.D. Ill. Aug. 28, 2012) .................................................... 9, 15

*Superior Indus., LLC v. Thor Global Enters. Ltd*,
   700 F.3d 1287 (Fed. Cir. 2013) ................................................................................ 7, 8, 9, 12

**Statutes**

35 U.S.C. § 271(b) ................................................................................................................. 8

35 U.S.C. § 271(c) .............................................................................................................. 9, 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 6, 16

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 6

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Molex Inc. ("Molex") respectfully moves to dismiss the claims of infringement in the Amended Complaint filed by Plaintiffs Bel Fuse Inc., Bel Fuse Ltd., Bel Fuse (Macau Commercial Offshore) Ltd., Bel Connector Inc. and Bel Transformer Inc. (collectively "Bel Fuse") on August 20, 2013.  (*See* Dkt. 11.)

## INTRODUCTION AND SUMMARY

Bel Fuse's original complaint failed to meet minimal pleadings standards; its Amended Complaint only makes matters worse.  Bel Fuse's amended pleading broadly identifies a variety of Molex accused products that purportedly infringe three asserted patents.  It then charges that *all* of these accused products infringe one or more claims of *each* of the asserted patents despite the impossibility of such infringement.  For example, the accused "Single Port" magnetic jacks could not possibly infringe asserted U.S. Patent No. 6,840,817 ("the '817 patent"), which expressly claims multiple ports.  In addition, the accused "Surface Mount Technology" jacks, as broadly defined by Bel Fuse, could not categorically infringe any claim of the three asserted patents because, as explained below, these accused products do not have the required circuit components.

Bel Fuse's direct and indirect infringement allegations must fail under Rule 12(b)(6). The identification of accused products and the infringement allegations of the Amended Complaint are so manifestly overbroad that they are not plausible and should be dismissed.  *See K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013) (explaining that Form 18 pleading will satisfy Rule 8, but also adding "we think it clear that an implausible claim for patent infringement rightly should be dismissed.").  Even Bel Fuse likely will agree (when challenged) that certain of the accused products could not possibly infringe each of the asserted patents, yet this is exactly what the Amended Complaint alleges.

1

Bel Fuse, if it chooses to try yet another pleading, should plausibly and accurately state its claims of infringement.

## FACTUAL BACKGROUND

### A.     Procedural Background

This is the second action between the parties.  Bel Fuse filed an initial action (now dismissed) against Molex on April 12, 2012.  *See Bel Fuse Inc. v. Molex Inc.*, Civil Action No. 12-cv-2192 (D.N.J.) (Salas, J.).  The complaint in that action, like the present one, alleged infringement of U.S. Patent No. 7,123,117 ("the '117 patent"), U.S. Patent No. 5,736,910 ("the '910 patent"), and U.S. Patent No. 6,840,817 ("the '817 patent") (collectively, the "patents-in-suit").  Civil Action No. 12-cv-2192 at Dkt. 1.  Shortly after filing its first action, Bel Fuse offered to settle the lawsuit.  Bel Fuse subsequently did not serve its complaint and Judge Salas dismissed the action pursuant to Rule 4(m) on November 8, 2012.  *Id.* at Dkt. 8.

Bel Fuse filed the present action on April 22, 2013, a year after it filed its prior complaint.  (Dkt. 1.)  The original complaint in this action was essentially identical to the complaint in the previously dismissed action.  Molex agreed to waive service of process on June 12, 2013.  (Dkt. 5.)  It thereafter moved to dismiss claims of indirect and willful infringement that Bel Fuse failed to properly plead.  (Dkt. 8.)

Bel Fuse responded to Molex's motion by filing an Amended Complaint on August 20, 2013. (Dkt. 11.)  Bel Fuse also submitted an opposition to Molex's motion, which argued that Molex's motion was moot. (Dkt. 12.)   Molex subsequently withdrew its motion to dismiss (*see* Dkt. 13), and the Court dismissed Molex's motion without prejudice to refile against the Amended Complaint (*see* Dkt. 14).

**B.     Bel Fuse's Amended Complaint**

The Amended Complaint purports to state claims against Molex for direct and indirect patent infringement of the '117 patent, the '910 patent, and the '817 patent.  These three asserted patents are generally directed to connectors for linking computers to other computers or networks, but each patent is directed to a different connector technology.

The '117 Patent.  This patent, attached as Exhibit A to the Amended Complaint (Dkt. 11-1), includes five independent claims: claims 1, 2, 5, 8, and 10.  Each of these independent claims, and therefore each claim of the patent, requires a "3-wire common mode choke."  (*See* Am. Compl. at Ex. A, Dkt. 11-1, at col. 7, l. 30 - col. 10, l. 10.)  A common mode choke is a circuit element that, when arranged with other magnetic circuit elements, suppresses undesired noise in a signal processing circuit.

The '910 Patent.  This patent, attached as Exhibit B to the Amended Complaint (Dkt. 11-2), includes four independent claims: claims 1, 11, 12, 13.  Each of these independent claims, and therefore each claim of the patent, defines a "modular connector" that includes at least one capacitor among other elements.  (*See* Am. Compl. at Ex. B, Dkt. 11-2, at col. 8, l. 23 – col. 12, l. 15.)  A capacitor is a circuit element that stores energy and helps filter communication signals.  Figure 7 of the patent illustrates the circuit and circuit elements required by various claims.

The '817 Patent.  This patent, attached as Exhibit C to the Amended Complaint (Dkt. 11-3), has one independent claim, claim 1, which defines a modular connector with "a housing having at least two aligned compartments, a top portion and a bottom portion, each compartment being structured and arranged to receive respective plugs."  (*See* Am. Compl. at Ex. C, Dkt. 11-3, at col. 11, ll. 8 - 22.)  All other claims of the patent, claims 2-13, are dependent on claim 1 and therefore also require the "two aligned compartments."  Figure 5a illustrates this arrangement:



FIG. 5a

The written description of the patent explains that this is "multiport connector" in a stacked configuration. (*See id.* at col. 7, ll. 19 - 22.) The compartments function as individual registered jack (RJ) connectors and "are arranged in vertically aligned pairs of upper and lower compartments 114 and 116, respectively, with each compartment being shaped and dimensioned to receive a conventional modular RJ plug 115." (*Id.* at col. 7, ll. 24 – 29.)

The Amended Complaint specifically charges infringement of the three patents, both direct and indirect, against a variety of Molex products:

> 13.   The accused products are magnetic jacks. At least the following magnetic jacks, which are manufactured, used, offered for sale, sold, and/or imported by Molex in or into the United States infringe one or more claims of each of the Asserted Patents: jacks to which Molex refers in its publications as "Single Port Magnetic Jacks," "Multi port Magnetic Jacks," "Single Port PoE Magnetic Jacks," "Multi port PoE Magnetic Jacks" and "Surface Mount Technology" jacks (collectively referred to as "Molex's Magnetic Jacks" or "Magnetic Jacks").

> \* \* \*

> 20.   Molex has been and is infringing, actively inducing others to infringe, and/or contributing to the infringement of one or more claims of each of the Asserted Patents by, directly and/or through intermediaries, making, using, selling, offering for sale and/or

4

importing products, including, but not limited to, its Magnetic Jacks, in or into the United States and this judicial district, that are covered by one or more claims of each of the Asserted Patents.

21. Molex has been and is knowingly inducing infringement of one or more claims of each of the Asserted Patents with specific intent to do so by, without limitation, making, using, importing, selling and/or offering for sale Molex's Magnetic Jacks for or to its customers, including, but not limited to, Cisco Systems, Inc., Hewlett Packard Company and/or their contract manufacturers, whose end-products incorporate or constitute Molex's Magnetic Jacks. Such products have been and are used, offered for sale, sold, and/or imported in or into the United States with Molex's knowledge. Moreover, Molex has been and continues to induce infringement by providing those customers and others with drawings, information, technical support and services relating to its Magnetic Jacks. Further, Molex contributes to the infringement of one or more claims of each of the Asserted Patents because Molex knows that its Magnetic Jacks are made for use in infringement and are not staple articles of commerce suitable for substantial non-infringing use.

(Am. Compl., Dkt. 11 at ¶¶ 13-21.)

C. The Accused Products

The Amended Complaint identifies five categories of accused products: (1) "Single Port Magnetic Jacks," (2) "Multi port Magnetic Jacks," (3) "Single Port PoE Magnetic Jacks," (4) "Multi port PoE Magnetic Jacks," and (5) "Surface Mount Technology" jacks. (Am. Compl., Dkt. 11, at ¶ 13.) Molex's website provides the following "selection matrix" that includes reference images of the first four categories:

**Selection Matrix** (images are for reference only)


Single Port Magnetic Jacks


Multi port Magnetic Jacks


Single Port PoE Magnetic Jacks


Multi port PoE Magnetic Jacks

See http://www.molex.com/molex/products/family?key=magnetic_modular_jacks. Single port jacks have one location for receiving a plug, and multi port jacks have multiple locations for

receiving multiple plugs. These different types of connectors are also illustrated in Exhibit 1 to the Nosher Declaration,[1] which is a brochure for "Modular Jacks." Bel Fuse's fifth and last category of accused products, which is not listed in the foregoing selection matrix, is "Surface Mount Technology" (SMT) jacks. As shown in the attached Molex brochure, SMT is a term used to describe the manner in which a jack is attached to a printed circuit board (PCB). *See* Nosher Decl. Ex. 1. The phrase "SMT jacks" thus refers to an exceedingly broad category of products, which on their own do not typically include any circuit elements, magnetic or otherwise.

## LEGAL STANDARDS

### A.   Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6)

Dismissal of a claim is appropriate under Rule 12(b)(6) when a plaintiff fails to satisfy the pleading requirements of Rule 8(a)(2), which provides that every pleading for a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); FED. R. CIV. P. 12(b)(6). Whether a claim is sufficiently pleaded is analyzed under the *Twombly* and *Iqbal* standard articulated by the Supreme Court. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

There are two steps in determining whether a pleading is sufficient. *See Iqbal*, 129 S. Ct. at 1950. First, a court identifies the allegations that are not entitled to the presumption of truth, which includes any allegations that are "bare assertions," merely "formulaic recitation[s] of elements," or "conclusory." *Id.* at 1950-51. Second, a court examines the remaining "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

---

[1] Molex files the Declaration of Todd M. Nosher "Nosher Decl." in conjunction with and in support of its present motion. The Nosher Declaration includes two (2) exhibits (Exhibit 1 and Exhibit 2) as referenced herein.

To demonstrate plausibility, a plaintiff must go beyond pleading facts that, when assumed to be true, are "merely consistent with a defendant's liability," and must instead plead facts sufficient to permit the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556). Put simply, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor will a complaint suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Merely pleading the "bare elements of [a] cause of action" will result in the dismissal of the claim. *Id.* at 1954.

**B.     Pleading Direct Infringement Under 35 U.S.C. § 271(a)**

A claim for direct infringement generally only needs to meet the minimal pleading standard set forth in Form 18. *Superior Indus., LLC v. Thor Global Enters. Ltd*, 700 F.3d 1287, 1295 (Fed. Cir. 2013). However, "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." *K-Tech*, 714 F.3d at 1284. As such, even under Form 18, claims of direct infringement that are unduly broad or facially implausible should be dismissed. *See, e.g.*, *Prism Techs., LLC v. AT&T Mobility, LLC*, 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (finding that allegation of infringement against "various wireless products and data services" was too broad to adequately plead a claim of infringement); *Air Vent, Inc. v. Owens Corning Corp.*, 02:10-CV-01699, 2011 WL 2601043, at *3-4 (W.D. Pa. June 30, 2011) (dismissing plaintiff's claim of infringement as being implausible based on the claim language of the asserted patent); *Pieczenik v. Abbott Labs.*, 10-2230, 2011 WL 1045347, at *6 (D.N.J. Mar.

7

23, 2011) (finding that an allegation of patent infringement that accused peptides and antibodies falling outside the scope of the asserted patent was implausible).

### C. Pleading Indirect Infringement Under 35 U.S.C. § 271(b)

A party is liable for induced infringement only if the party "actively induces infringement of a patent." 35 U.S.C. § 271(b). Induced infringement requires the following elements: "(1) there was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer 'possessed specific intent [and] not merely . . . knowledge of the acts alleged' to induce; and (4) there was active inducement of the direct infringer." *E.g.*, *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp. 2d 316, 323 (D. Del. 2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003)). The specific intent element cannot be met without "knowledge of the existence of the patent that is infringed." *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S.Ct. 2060, 2068 (2011).

To satisfy the pleading requirements with respect to a claim for induced infringement, the complaint must allege facts that support a reasonable inference that the accused infringer "specifically intended to induce infringement . . . or that it knew it had induced acts that constitute infringement." *Superior Indus.*, 700 F.3d at 1296. Further, while an identification of a specific direct infringer is not required, factual evidence of a third-party direct infringer must be presented in the pleadings in order for a plaintiff to pursue indirect theories of infringement. *E.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 1:10cv910 LMB/TRJ, 2013 WL 265602, at *9, n. 7 (E.D. Va. Jan. 22, 2013); *see also In re Bill of Lading Transmission and Processing Sys. Patent Litigation*, 681 F.3d 1323, 1336-37 (Fed. Cir. 2012).

**D.     Pleading Contributory Infringement Under 35 U.S.C. § 271(c)**

To state a claim for contributory infringement, a plaintiff must allege sufficient facts to raise the reasonable inference that the defendant sells or offers to sell a material or apparatus (1) for use in practicing a patented invention, (2) that is material to practicing the invention, (3) that has no substantial non-infringing uses, and (4) is known by the party "to be especially made or especially adapted for use in an infringement of such patent." *Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, 12-cv-06375-JST, 2013 WL 2249707, at *2 (N.D. Cal. Apr. 18, 2013). Contributory infringement thus includes an intent element which requires the alleged contributory infringer to have sold a component "knowing the same to be especially made or especially adapted for use in an infringement of such a patent," and requires "knowledge of the existence of the patent that is infringed." *Global-Tech*, 131 S. Ct. at 2067-68.

Failure to adequately plead facts allowing an inference with respect to elements of contributory infringement is sufficient grounds for dismissal. *See, e.g.*, *Superior Indus.*, 700 F.3d at 1296 (dismissing claim for failure to allege that the accused products are "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use"); *Bill of Lading*, 681 F.3d at 1337-39 (dismissing claim for failure to allege facts supporting an inference that the accused products have no substantial non-infringing uses); *Artemi Ltd. v. Safe-Strap Co., Inc.*, 03-3382(JEI/AMD), 2013 WL 2367874, at *6 (D.N.J. May 30, 2013) (dismissing claim for failure to plead facts concerning the accused component and concerning defendant's intent); *Pragmatus AV, LLC v. TangoMe, Inc.*, 11-1092-LPS, 2013 WL 571798, at *13-14 (D. Del. Feb. 13, 2013). The complaint also must plead facts plausibly showing direct infringement by a third party. *Radiation Stabilization Solutions, Inc. v. Varian Medical Sys., Inc.*, 11 C 7701, 2012 WL 3757489, at *3 (N.D. Ill. Aug. 28, 2012).

9

## ARGUMENT

A.     **The Complaint Fails to State a Claim of Direct Infringement**

Bel Fuse unequivocally alleges that Molex's "Magnetic Jacks" infringe all three of the patents-in-suit. (*See* Am. Compl., Dkt. 11, at ¶ 13) ("[Magnetic Jacks] infringe one or more claims of each of the Asserted Patents"); (*id.* at ¶ 20) ("Magnetic Jacks . . . are covered by one or more claims of each of the Asserted Patents"). This claim of infringement is simply not plausible in view of the materials submitted with and referenced by the Complaint.[2]

Most glaringly, each claim of the '817 patent requires, among other things, a multi port connector arrangement. Each claim requires "a housing having at least two aligned compartments, a top portion and a bottom portion, each compartment being structured and arranged to receive respective plugs." (*See* Am. Compl. at Ex. C, Dkt. 11-3, at col. 11, ll. 8 - 22.) Bel Fuse did not invent multi port connectors and the claims of the '817 patent require more than merely a multi port arrangement, but the claims nonetheless require at least two aligned compartments: a top and a bottom. Molex's accused "Single Port Magnetic Jacks" and "Single Port PoE Magnetic Jacks" could not possibly directly infringe the '817 patent because each claim of this patent requires a two compartment design. A claim that a single port connector directly infringes the '817 patent is simply not plausible.

Bel Fuse likely will concede, when challenged, that Molex's single port connectors do not directly infringe the '817 patent. Its complaint, however, is not so limited. Bel Fuse repeatedly alleged that all of the accused products, including single port connectors, directly

---

[2] Because Bel Fuse's complaint relies on Molex's "publications" to define its claim of infringement – *see* Am. Compl. at ¶ 13 – the Court may refer to the Molex publications submitted herewith as Nosher Decl. Exhibits 1 and 2 in resolving the present motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

infringe "one or more claims of each of the Asserted Patents." These allegations are simply not plausible due to their breadth and the claim of infringement should be dismissed. *See Air Vent*, 2011 WL 2601043, at *3-4.

The accusations regarding "Surface Mount Technology" jacks are also flawed. Surface mount technology, in this context, describes the manner by which modular connectors may be attached to printed circuit boards. Molex sells many different types of SMT-attached connectors, *see* Nosher Decl. Ex. 1, including modular connectors using surface mount technology that have no circuit components whatsoever. Drawings of one such connector – series 43743 – are attached as Exhibit 2 to the Nosher Declaration and readily available as a "publication" on Molex's website.[3] As discussed above, the claims of the '910 patent require a capacitor, and the claims of the '117 patent requires a 3-wire common mode choke. SMT jacks, such as the 43743 series connectors, have no circuit components, let alone the specific circuit components required by the '910 and '117 patents. Bel Fuse could not possibly succeed on a claim that all SMT jacks infringe one or both of these patents. Accordingly, Bel Fuse's claim of direct infringement with respect to all SMT jacks is overly broad, and is an implausible claim that should be dismissed. *See Prism Techs.*, 2012 WL 3867971, at *5.

As noted above, the Federal Circuit has confirmed that a direct infringement claim need only satisfy Form 18. *K-Tech*, 714 F.3d at 1284. The court added, however, that even under Form 18, an accused infringer must "be placed on notice of what activity or device is being accused of infringement." *Id.* It is unnecessary for a plaintiff to "identify an accused device by name," but "facial plausibility" remains a touchstone of whether a complaint is adequate. *Id.*

---

[3] Additional examples include Series 44144, 44282, 85502, 85542, and 85543, which are described in Nosher Decl. Ex. 1. Molex also makes available at its website PDF drawings and products specifications for these products.

Above all else, the Federal Circuit confirmed that "we think it clear that an implausible claim for patent infringement rightly should be dismissed." *Id.*

Bel Fuse's infringement allegations in the Amended Complaint fail to meet the requirement of "facial plausibility" due to their breadth. Bel Fuse alleged too much by broadly defining the accused products and then broadly alleging that these products infringe claims of all three patents-in-suit. These expansive allegations result in nonsensical charges of infringement that should be dismissed as a matter of law.

**B.     The Complaint Fails to State a Claim of Induced Infringement**

The problems that plague Bel Fuse's claims of direct infringement also infect its claims of indirect infringement. By confusing rather than clarifying the acts of alleged direct infringement, Bel Fuse has also confused its claim of inducement of infringement. Because certain of the accused products cannot infringe one or more of the asserted patents, the Amended Complaint fails to state a plausible claim that Molex intended to induce others to infringe. The claims of indirect infringement, including inducement of infringement, cannot stand as pleaded.

To state a plausible claim for induced infringement, Bel Fuse must plead facts supporting a reasonable inference that Molex acted with the requisite specific intent. *Superior Indus.*, 700 F.3d at 1295-96. Paragraph 21 of the Amended Complaint asserts:

> Molex has been and is knowingly inducing infringement of one or more claims of each of the Asserted Patents with specific intent to do so by, without limitation, making, using, importing, selling and/or offering for sale Molex's Magnetic Jacks for or to its customers, including, but not limited to, Cisco Systems, Inc., Hewlett Packard Company and/or their contract manufacturers, whose end-products incorporate or constitute Molex's Magnetic Jacks.

By the terms of this paragraph, Bel Fuse broadly accuses Molex of intending to induce infringement of each of Bel Fuse's asserted patents. This accusation includes a claim that Molex

12

intended to infringe Bel Fuse's '817 patent, which require multiple ports, based on Molex's single port connectors, as well as a claim that Molex intended to infringe Bel Fuse's '910 and '117 patents, both of which expressly require circuit components, based on Molex's SMT jacks that have no circuit components whatsoever. This is simply not plausible.

Bel Fuse must allege more if it genuinely intends to argue that Molex's activity in connection with its single port connectors and all SMT jacks is an inducement to infringe each of the asserted patents. Likewise, if Bel Fuse did not intend its allegations to be read so broadly, its claims should be dismissed. Either way, Bel Fuse should submit a proper pleading that provides notice to Molex of the nature of its assertions.

## C.      The Complaint Fails to State a Claim of Contributory Infringement

Bel Fuse's allegations in the Amended Complaint pertaining to contributory infringement still suffer from the same deficiencies originally identified Molex's first motion to dismiss. The Amended Complaint does not plausibly allege that the accused product constituted a material part of an invention, that the accused product was especially adapted to infringe the patents-in-suit, that the accused product has no substantial non-infringing uses, or that a third party direct infringer exists. Accordingly, Bel Fuse's allegations are inadequate to state a claim for contributory infringement under 35 U.S.C. §271(c).

Bel Fuse's Amended Complaint still ignores the statutory requirement that the accused product or component be "a material part of the invention." 35 U.S.C. § 271(c). The amended pleading does not allege, for example, that the accused products are a material part of any invention claimed in the patents-in-suit. There is a reason for this. Even Bel Fuse likely does not contend that the accused products are merely a "part" of a broader claimed invention. To the extent that Bel Fuse does so contend, it should plead these facts.

A simple example explains the problem with Bel Fuse's contributory infringement allegations. Claim 1 of the '117 Patent recites:

> 1. A magnetic interface circuit which comprises:
>
> a transformer having a first winding connected to a first circuit and a second winding connected to a second circuit each of the first and second windings having two output ports and at least one of the windings having a center tap port; and
>
> a 3-wire common mode choke having a center winding and two outer windings, the center winding being connected to the center tap of the at least one winding and the outer windings being respectively connected to the output ports of the, at least one winding.

(*See* Am. Compl. at Ex. A, Dkt. 11-1, at col. 7, ll. 30 – 40.) The claimed invention thus defines a magnetic interface circuit with two circuit elements – a transformer and a 3-wire common mode choke – connected to yet other circuits. Bel Fuse apparently contends that at least some of Molex's products directly infringe this claim. These same products, however, could not possibly form the basis for a contributory infringement claim. This is because Molex's products, if they include the required circuit elements configured as claimed, would constitute the *entire* invention and not a material *part* of it. It is possible that Bel Fuse intended to plead in the alternative, but even this is not clear because the Amended Complaint does not assert that the accused products are a material part of a broader invention. As such, the present pleading is inadequate, and Bel Fuse's claim of contributory infringement should be dismissed.

Bel Fuse also ignores the requirement of pleading the existence of a third party direct infringer with respect to contributory infringement. Although "Cisco Systems, Inc., Hewlett Packard Company and/or their contract manufacturers" are implicitly identified as third party direct infringers with respect to Bel Fuse's claim of induced infringement, no third party direct infringer is alleged or identified with respect to Bel Fuse's allegations of contributory

infringement. A claim of contributory infringement that does not plead facts supporting a plausible inference that a direct infringer exists is legally inadequate. *Radiation Stabilization*, 2012 WL 3757489, at *3 ("RSS' complaint of indirect infringement fails as to the Hospital Defendants and as to Varian because RSS does not allege *any* third party direct infringer aided by *any* of the Defendants.") (emphasis in original).

Additionally, Bel Fuse fails to plead any facts supporting its allegations that the accused product was especially adapted to infringe the patents-in-suit, and that the accused product has no substantial non-infringing uses. Paragraph 21 of the Amended Complaint simply states that "Molex contributes to the infringement of one or more claims of each of the Asserted Patents because Molex knows that its Magnetic Jacks are made for use in infringement and are not staple articles of commerce suitable for substantial non-infringing use." This is nothing more than the "formulaic recitation of elements" that was rejected in *Iqbal*. *See* 129 S. Ct. at 1950-51.

Finally, Bel Fuse's claims of contributory infringement should be dismissed as implausible for the same reasons discussed above in connection with its claims of direct and induced infringement. The overbroad definition of the accused products results in claims of contributory infringement that are nonsensical. Bel Fuse's pleading should be required to place Molex "on notice of what activity or device is being accused of infringement" and meet the standard of "facial plausibility" before the Court allows this action to proceed.

## CONCLUSION

For the foregoing reasons, Molex respectfully requests that the Court dismiss all claims of infringement in Bel Fuse's Amended Complaint for failure to state a claim upon which relief may be granted. Its new and exceedingly broad definition of the accused products results in

nonsensical infringement claims that should be dismissed under Fed. R. Civ. P. 12(b)(6) as implausible.

Dated: September 6, 2013

Respectfully submitted,

By: s/ David E. De Lorenzi

David E. De Lorenzi
Todd M. Nosher
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone No.:  (973) 596-4500
Facsimile No.:  (973) 596-0545

*Of counsel:*
John W. Kozak
David M. Airan
Leonard Z. Hua
**LEYDIG VOIT & MAYER**
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601-6731
Telephone No.:  312-616-5600
Facsimile No.:  312-616-5700

*Attorneys for Defendant Molex Incorporated*