David E. De Lorenzi
Charles H. Chevalier
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone No.: (973) 596-4500
Facsimile No.: (973) 596-0545

*Of counsel:*
John W. Kozak
David M. Airan
Leonard Z. Hua
**LEYDIG, VOIT & MAYER**
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601-6731
Telephone No.: 312-616-5600
Facsimile No.: 312-616-5700

*Attorneys for Defendant Molex Incorporated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEL FUSE INC., BEL FUSE LTD., BEL FUSE (MACAU COMMERCIAL OFFSHORE) LTD., BEL CONNECTOR INC. and BEL TRANSFORMER INC.,<br><br>        Plaintiffs,<br>v.<br>MOLEX INCORPORATED,<br><br>        Defendant. | Civil Action No.: 1:13-cv-02566-JBS-JS<br><br>*DOCUMENT ELECTRONICALLY FILED* |

## DEFENDANT MOLEX INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**TABLE OF CONTENTS**

SUMMARY ............................................................................................................... 1

ARGUMENT ............................................................................................................. 1

A.  Bel Fuse's Complaint Does Not State a Plausible Claim of Relief for Direct Infringement ........................................................................................... 1

1.  Bel Fuse's Categorical Infringement Allegation That All Single Port Connectors Directly Infringe the '817 Patent Is Implausible ........................... 4

2.  Bel Fuse's Categorical Infringement Allegation That All SMT Connectors Directly Infringe the '910 and '117 Patents Is Implausible ............................. 7

B.  Bel Fuse's Complaint Does Not State A Plausible Claim of Relief for Indirect Infringement ........................................................................................ 10

C.  The Amended Complaint Should Be Dismissed .................................................. 11

CONCLUSION ......................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   692 F.3d 1301 (Fed. Cir. 2012) (en banc) ............................................................................ 6, 10

*Bender v. Broadcom Corp.*,
   09-1147MHP, 2009 WL 3571286 (N.D. Cal. Oct. 30, 2009) ................................................. 8, 9

*FTC v. Hope Now Modifications, LLC*,
   09-1204 JBS/JS, 2011 WL 883202 (D.N.J. Mar. 10, 2011) ...................................................... 3

*In re Bill of Lading Transmission and Processing Sys. Patent Litigation*,
   681 F.3d 1323 (Fed. Cir. 2012) ............................................................................................. 3, 9

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) ...................................................................................................... 2

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir.1993) ..................................................................................................... 2

*Prism Techs., LLC v. AT&T Mobility, LLC*,
   8:12CV122, 2012 WL 3867971 (D. Neb. Sept. 6, 2012) ..................................................... 7, 12

*Superior Indus., LLC v. Thor Global Enters. Ltd*,
   700 F.3d 1287 (Fed. Cir. 2013) ............................................................................................... 10

*Top v. Ocean Petroleum, LLC*,
   10-1042 JBS/AMD, 2010 WL 3087385 (D.N.J. Aug. 3, 2010) ............................................ 3, 6

*Vanmoor v. Wal-Mart Stores, Inc.*,
   201 F.3d 1363 (Fed. Cir. 2000) ................................................................................................. 9

**Statutes**

35 U.S.C. § 271(b) ...................................................................................................................... 10

35 U.S.C. § 271(c) ...................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 12

## SUMMARY

Bel Fuse's amended complaint should be dismissed because its categorical claims of infringement are simply not plausible. Not *all* of the products in the broadly drawn categories can possibly infringe *each* of the three asserted patents, and Bel Fuse has made no attempt to accuse any specific products of infringing any specific patent.

Bel Fuse's opposition (Dkt. 19; "Opp'n") defends a complaint that Bel Fuse did not file. It argues that Molex's single port connectors could "possibly infringe" if modified, and further allows that only "some" of the connectors in the SMT product line might infringe the asserted patents. Opp'n at 13, 15. These arguments do not track the amended complaint. Bel Fuse's amended complaint actually alleges that Molex directly infringes each of the three asserted patents by making, using, selling, offering to sell or importing all connectors in five different categories. There are no exceptions. These broad direct infringement allegations sweep in too many products, including those that could not possibly infringe the asserted patents, and should be rejected under Fed. R. Civ. P. 12(b)(6).

There is no excuse for Bel Fuse's amorphous and over-inclusive pleading. Molex makes available on its website many detailed drawings and specifications. Bel Fuse also competes with Molex and undoubtedly has intimate knowledge of Molex's product offerings. And, Bel Fuse knows what products it intends to pursue in this litigation. Molex does not. The Court should require Bel Fuse to file a pleading that properly charges infringement.

## ARGUMENT

**A.      Bel Fuse's Complaint Does Not State a Plausible Claim of Relief for Direct Infringement**

Bel Fuse begins its argument by criticizing a straw man. It interprets Molex's motion as "suggesting that the Form 18 standard is not enough to allege direct infringement." Opp'n at 7.

This is simply incorrect.  At no point did Molex suggest that Form 18 was inadequate.  To the contrary, Molex's opening memorandum explicitly acknowledged that a pleading under Form 18 was adequate.  (Dkt. 15; Molex Mem. at 11) ("a direct infringement claim need only satisfy Form 18.")  Bel Fuse, however, can find no refuge in Form 18 because its amended complaint is not patterned on it.  By lumping together indisputably non-infringing products with allegedly infringing products, Bel Fuse's pleading failed to state a proper claim.

> jacks to which Molex refers in its publications as [1] "Single Port Magnetic Jacks," [2] "Multi port Magnetic Jacks," [3] "Single Port PoE Magnetic Jacks," [4] "Multi port PoE Magnetic Jacks" and [5] "Surface Mount Technology" jacks (collectively referred to as "Molex's Magnetic Jacks" or "Magnetic Jacks").

(Dkt. 11; Am. Compl. at ¶ 13) (numbering added).  It thus explicitly refers to Molex's "publications" to define these five categories of products.[1]  Bel Fuse admits to an understanding that there are "likely hundreds (or possibly thousands) of products" covered by merely two of those five categories.  Opp'n. at 13.  It further acknowledges that the Surface Mount Technology (SMT) line of product is "large."  *Id.* at 14.  The pleading then charges *all* products in these five categories with direct infringement of three asserted patents.  (Dkt. 11; Am. Compl. at ¶ 20.)

Molex will later prove, either through summary judgment or at trial, that none of its products infringe any valid claim of the asserted patents, but the present motion is not about

---

[1] Bel Fuse urges the Court in a footnote not to consider Molex's publications in this motion to dismiss.  Opp'n. at 12, n. 4.  The same footnote acknowledges, however, that Molex's publications "help identify the accused products in the Amended Complaint."  *Id.*  The identification of the accused products, of course, is exactly what this motion is about.  Bel Fuse had some publications in mind when drafting the Amended Complaint, but it does not say which of Molex's publications are helpful to "identify" the accused products or why the ones cited by Molex are not representative.  Because Bel Fuse intended Molex's publications to assist the identification of the accused products, the Court should consider them in this motion.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

resolving the ultimate merits of this case. It is about whether Molex should be forced to defend "hundreds (or possibly thousands) of products in Molex's product lines" when Bel Fuse has no plausible basis for pursuing infringement charges against them. *See Top v. Ocean Petroleum, LLC*, 10-1042 JBS/AMD, 2010 WL 3087385, at *5 (D.N.J. Aug. 3, 2010) (Simandle, J.) (refusing to "impose the burdens of discovery" without a plausible claim); *see also FTC v. Hope Now Modifications, LLC*, 09-1204 JBS/JS, 2011 WL 883202, at *3 (D.N.J. Mar. 10, 2011) (Simandle, J.). Molex provided specific examples of why the charges of direct infringement are overly broad and therefore implausible. The Court does not have to conduct a *Markman* hearing to determine that certain of Bel Fuse's allegations of direct infringement cannot possibly succeed. *Cf. In re Bill of Lading Transmission and Processing Sys. Patent Litigation*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("formal claim construction is not required to reach the conclusion that each Amended Complaint affirmatively establishes that Appellees' products can be used for non-infringing purposes.").

Bel Fuse does not attempt to substantively defend its implausible *direct infringement* allegations apart from the *indirect infringement* section of its argument. Despite the law that direct infringement involves different acts and has a different pleading standard than indirect induced infringement, Bel Fuse "substantively addresses Molex's arguments on 'implausibility' *only* in the induced infringement section." Opp'n at 8, n. 1 (emphasis added). This is because Bel Fuse cannot possibly justify (1) its direct infringement allegation of the '817 patent against the broad category of single port connectors, or (2) its direct infringement allegations of the '910 and '117 patents against all surface mount technology (SMT) jacks.

### 1.     Bel Fuse's Categorical Infringement Allegation That All Single Port Connectors Directly Infringe the '817 Patent Is Implausible

Molex's opening memorandum explained why single port connectors could not infringe the '817 patent, the claims of which explicitly require a multiple port connector.  Bel Fuse responded by obfuscating its own patent and allegations of direct infringement.

Bel Fuse first argues that Molex's implausibility argument cannot be correct because Figures 1a, 1b, and 1c of the '817 patent are directed to a single port connector.  Opp'n at 12. That these figures are directed to a single port connector is certainly true: "FIGS. 1a through 1c show a modular connector which includes a plastic housing 12 having a compartment for receiving RJ connector components."  '817 Patent at col. 3, l. 66 - col. 4, l. 1.  However, the *claims* of the '817 patent specifically require "two compartments."  *Id.* at col. 11, ll. 9-22.  The claims are directed to the multiple compartment embodiment of Figure 5, not the single compartment embodiment of Figure 1.  *See id.* at col. 7, ll. 19-22 ("FIGS. 5a and 5b show a multiport connector 100 in a stacked configuration which includes a plastic housing 112 having multiple compartments for receiving RJ connector components.").  The single compartment connector is a disclosed, but unclaimed, embodiment.

Bel Fuse next suggests that Molex somehow was ambiguous in its statement that its single port jacks could not infringe the '817 patent.  This is incorrect. The claims of the '817 patent require, in order for there to be a plausible charge of infringement, a product that has a housing that includes two compartments.  All of Molex's single port jacks have a housing with a single port – this is the definition of a single port jack.  As this dispute involves patent claims, there is no doubt a range of meanings is possible for certain claim terms and it is further likely that the parties will dispute which meanings are correct.  However, no real argument can be

4

made that one is equal to two, and Bel-Fuse's suggestion that somehow one can be plausibly considered two is not persuasive.

Bel Fuse's opposition also refers to the possibility that a single port connector may be "equivalent" to a multiport connector. Opp'n at 13. Nowhere in the complaint did Bel-Fuse suggest that any claims were infringed under the doctrine of equivalents. Consequently, this argument does not help Bel-Fuse's deficient complaint. Instead, Bel-Fuse's attempt to rewrite its complaint through its opposition brief should be rejected.

Perhaps recognizing the weakness of its legal argument, Bel Fuse argues that Molex's motion should be denied because single port connectors possibly could be used in a "multi-port connector arrangement." Opp'n at 12. For this argument, Bel Fuse relies on an incorrect illustration of Molex's 43090 series single port connector. *Id.* Bel Fuse well knows that this illustration is not representative of the 43090 series.[2] It acknowledges in a footnote that this illustration may be the product of "oversights or simple mistakes." Opp'n at 13, n. 5.   More importantly, Bel Fuse's opposition does not indicate that it will pursue a charge of direct infringement of the '817 patent in connection with the 43090 single port series products or any other single port product. This is because such a charge would be implausible.

Bel Fuse goes on to argue that Molex's single port connectors "may infringe" the '817 patent because Molex could combine them into a multiple port arrangement or because its customers could "possibly infringe the '817 patent" by doing the same thing. Opp'n at 13. These arguments are both erroneous as to Molex and needlessly speculative as to its customers. Molex does not combine single port connectors into a multiport product and then sell this

---

[2] The brochure Molex provided included a stock illustration of a multiport jack for a vertical single port jack. This stock illustration was used throughout the brochure (Ex. 1, at pp. 3-4) and clearly was not intended to illustrate a single port connector. The 43090 connector has but one port as was plainly stated in the brochure (Ex. 1, at p. 4). To the extent there is any single port jack that does have more than one port (something the brochure did not suggest as all the single port jacks are listed as having 1 port), such a connector is not a single port jack.

combined product as a "single port" connector.  To assert the argument is to expose the inadequacy of Bel Fuse's pleading.  Single port connectors are sold as single port connectors; multiport connectors are sold as multiport connectors.  To the extent that Molex may have "combined" single port connectors, they would be sold as "multiport" connectors, not single port connectors.  Bel Fuse's arguments also confuse direct infringement with indirect infringement.  Molex cannot be a direct infringer based on a customer's unilateral action, even if some customer somewhere combined two single port connectors into a multiport arrangement.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1305-06 (Fed. Cir. 2012) (en banc).

Bel Fuse had an obligation to investigate and bring only good faith claims of direct infringement.  Many of Molex's drawings are available on its website, and Bel Fuse, as a Molex competitor, is undoubtedly knowledgeable about its product offerings.  Molex sells both single port and multiple port connectors.  These are not the same products.  Molex's multiport connectors may be relevant to '817 patent (they do not infringe for yet other reasons), but Bel Fuse cannot plausibly state a claim that single port connectors *directly* infringe this patent because of the requirement of "two compartments."

The Court should reject Bel Fuse's categorical charges of direct infringement when those categories include products that do not infringe each of the three asserted patents.  Bel Fuse's amended complaint, as presently written, states a claim that is simply not plausible *even from Bel Fuse's perspective.* A complaint should state only plausible claims before defendants are subject to the "burdens of discovery." *See Ocean Petroleum*, 2010 WL 3087385, at *5.

From a Form 18 standpoint, Bel Fuse's complaint fails because it is overly broad.  Bel Fuse admits that the accused products relating to single port connectors could include "hundreds

(or possibly thousands) of products." Opp'n at 13. Although the amended complaint charges each of these products with infringing the '817 patent, Bel Fuse's opposition brief at least implicitly suggests that it would *not* pursue an infringement charge against this multitude of products. However, by so broadly defining the products, including those that undoubtedly do not infringe, Bel Fuse has not satisfied the minimal requirements of Rule 8. *See, e.g.*, *Prism Techs., LLC v. AT&T Mobility, LLC*, 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (finding that allegation of infringement against "various wireless products and data services" was too broad to adequately plead a claim of infringement).

Bel Fuse attempts to distinguish *Prism* because the plaintiff in that case "merely identified generic categories of products," whereas the amended complaint in this case purportedly "identifies the products accused of infringement by name." Opp'n at 7-8. This argument does not accurately reflect the amended complaint. Bel Fuse defined five categories of products by reference to Molex "publications." It further concedes in its opposition brief that hundreds, if not thousands, of specific products are implicated for the "single port" categories alone, which it describes as products within "Molex's *product lines*." Opp'n at 13 (emphasis added). Bel Fuse thus identifies the products under broad categories and not by name. Its allegations, like those at issue in *Prism,* leave Molex "with no notice as to how it allegedly infringes." 2012 WL 3867971, at *5.

### 2. Bel Fuse's Categorical Infringement Allegation That All SMT Connectors Directly Infringe the '910 and '117 Patents Is Implausible

The entirety of Molex's surface mount technology (SMT) line of jacks is included in the definition of accused products. (Dkt. 11; Am. Compl. at ¶¶ 13, 20.) Bel Fuse did not attempt to identify any specific SMT product out of the hundreds of different products that Molex sells or has sold. Molex's motion to dismiss therefore pointed out why exemplary SMT products could

not plausibly infringe any claim of the '910 or '117 patents.  Among other things, the '910 and '117 patents expressly require circuit components, which these SMT products lack.

Bel Fuse denies that it must show that *all* SMT products could plausibly infringe the asserted patents, which is an assertion it characterizes as "absurd."  Opp'n at 14.  It specifically argues "there is no requirement that Bel Fuse succeed in proving that 'all' products in a large product line infringe (now or ever) to include such allegations as to that product line in a complaint."  Opp'n at 14 (emphasis in original).  There is such a requirement in this case, however.  Bel Fuse established it by asserting that the accused products, including the entire SMT product line, infringe "one or more claims of each of the Asserted Patents."  (Dkt. 11; Am. Compl. at ¶ 20.)  Molex's motion to dismiss established why this broad allegation resulted in implausible infringement claims.  Molex agrees that it is "absurd" to charge each product in such a "large product line" with infringement.  It is Bel Fuse, however, that is responsible for this patent infringement assertion.  It should have crafted a narrower infringement allegation – one that provided notice to Molex of the charges – if it did not intend to charge each and every product in the line with infringement.

Bel Fuse relies on *Bender v. Broadcom Corp.*, 09-1147MHP, 2009 WL 3571286 (N.D. Cal. Oct. 30, 2009) for its argument that a charge against a broad product line is permissible. Opp'n at 14-15.  The district court in that case, however, explicitly noted "plaintiff has provided extensive examples of allegedly infringing products and has advanced a credible theory for why such a broad range of products might potentially infringe."  *Bender*, 2009 WL 3571286, at *4, n. 4.  No such examples or theory has been advanced here, particularly as to the entire SMT line of

8

products.[3]   Indeed, Bel Fuse does not attempt to justify how even a single product in Molex's SMT product line "might potentially infringe."   Further, as acknowledged by Bel Fuse, the outcome in *Bender* was based on a finding that the accused "product lines may be expected to have certain basic components." *Id.* at 15.   No such expectation exists in this case.   In fact, it is just the opposite.   Molex's SMT products would *not* be expected to have the components recited in the claims of the '910 and '117 patents because, as established in Molex's opening memorandum, these products lack any circuitry whatsoever.

Bel Fuse has effectively conceded that there are products in this line for which it cannot state a plausible claim of infringement.   The inescapable conclusion from Bel Fuse's opposition (at pp. 14-15) is that the direct infringement allegations as to SMT connectors should not be taken literally or at face value.   By insisting that the full scope of its allegations need not be plausible so long as some subset of those allegations might be, Bel Fuse has lost the day.[4]   No claim construction or substantive patent infringement analysis is required for the Court to reach this conclusion. *Cf. In re Bill of Lading,* 681 F.3d at 1339 (Fed. Cir. 2012) ("formal claim construction is not required to reach the conclusion that each Amended Complaint affirmatively establishes that Appellees' products can be used for non-infringing purposes.").   It is sufficient for the Court to recognize (1) that Bel Fuse's amended complaint asserts that *all* products in the SMT line directly infringe each of the asserted patents, and (2) Bel Fuse has not set forth a

---

[3] Bel Fuse's reliance on *Bender* would be justifiable if it had (1) advanced a theory of infringement applicable to the entire SMT line, and (2) genuinely intended to proceed with its broad charge that all SMT connectors infringe the asserted patent. This allegation, however, would have serious consequences for the validity of its patents. Molex sold SMT products for many years before Bel Fuse applied for its patents. If Bel Fuse charged these products with infringement, Molex could rely on this "allegation" to invalidate the patent. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000). The allegation *alone* has legal significance, which is likely the reason why Bel Fuse now does not argue that all SMT products infringe each of the asserted patents.

[4] Further, even if Bel Fuse pleaded (as it argues) that only a portion of the SMT product line is being accused of infringement under the '910 and '117 patents, Bel Fuse still failed to provide any basis for Molex to identify which products of Molex's large SMT product line are accused of infringing and which are not. Bel Fuse's allegations are therefore insufficient as a matter of law.

credible theory as to why *all* such products plausibly infringe the asserted patents.  The amended complaint should be dismissed.

## B.      Bel Fuse's Complaint Does Not State A Plausible Claim of Relief for Indirect Infringement

A patent owner may state a claim for indirect infringement for either induced infringement under 35 U.S.C. § 271(b) or contributory infringement under 35 U.S.C. § 271(c). There can be no indirect infringement, however, without direct infringement.  *Akamai*, 692 F.3d at 1308.   To state a plausible claim for either induced or contributory infringement, Bel Fuse must also plead facts supporting a reasonable inference that Molex acted with the requisite intent.  *Superior Indus., LLC v. Thor Global Enters. Ltd*, 700 F.3d 1287, 1296 (Fed. Cir. 2013).

Bel Fuse's indirect infringement allegations fail for the same reasons that its direct infringement allegations fail.  The overly broad categories of accused products also apply to Bel Fuse's indirect infringement claims.  These pleading errors, moreover, are magnified and take on greater significance in the indirect infringement context.   A claim of indirect infringement requires facts supporting an inference of intent to infringe.  Bel Fuse manifestly has not satisfied its increased pleading burden, particularly as to the intent requirement, because it failed to properly limit its direct infringement allegations to only those products that it can plausibly accuse of infringing.   Molex cannot reasonably be said to have intended to indirectly infringe a patent based on products that Bel Fuse itself does not, will not, and cannot accuse of direct infringement.

As to contributory infringement, Bel Fuse essentially concedes that it does not (1) allege that the accused products are only a material part of the invention, or (2) identify a third party direct infringer for any product.  Opp'n at 16-17.  It nonentheless asks the Court to read the complaint other than how it was written.  The Court is under no obligation to do this.  Bel Fuse

10

had multiple opportunities to plead its claims.  It even had the benefit of Molex's first motion to dismiss at the time it revised its originally deficient pleading.

Bel Fuse should have properly pleaded contributory infringement by identifying the products that comprise a "material part of the invention" and the customers that directly infringe. Bel Fuse's speculation as to what Molex later "may argue" in this litigation (*see* Opp'n at 17) does not justify its own pleading failure.  Bel Fuse may have intended its complaint to allege that some products constitute a material part of an invention – as opposed to the invention itself – but the amended complaint does not draw this distinction.  Instead, as is evident by paragraph 21, Bel Fuse accused Molex of indirectly infringing the *same* patents based on the *same* activities that allegedly support a claim of direct infringement.  Bel Fuse does not attempt to justify the allegations of paragraph 21 as an alternative pleading to paragraph 20.  Rather, it alleges that the same products both directly and indirectly infringe.  This is improper.  Bel Fuse, as the master of its own complaint, should accurately  state its claims.

### C.    The Amended Complaint Should Be Dismissed

This is the second lawsuit initiated by Bel Fuse on the same patents.  Molex's opening memorandum (at p. 2) noted the Bel Fuse dropped its first lawsuit  in 2012 after inviting settlement discussions.  The negotiations initially  involved all three patents, but culminated with a license demand by Bel Fuse for only the '117 and '910 patents.  Bel Fuse has never articulated why or how Molex's actions may infringe the '817 patent.  Molex genuinely does not know what products Bel Fuse accuses of infringing the '817 patent.

Bel Fuse had an opportunity to clarify its infringement allegations when it initiated the present action.  It then had another chance to clarify its allegations through its amended complaint.   Rather than reducing ambiguities, the amended complaint further confused matters

11

by first identifying five broad categories of products and then accusing all products in these categories of infringing all three asserted patents. By so broadly defining the field of potentially accused products, Bel Fuse has essentially hidden its allegations of what is at issue and what is not. It should be required to file a complaint that provides Molex with notice of the products at issue for each asserted patent. *See Prism Techs.*, 2012 WL 3867971, at *5.

## CONCLUSION

For the foregoing reasons, Molex respectfully requests that the Court dismiss all claims of infringement in Bel Fuse's Amended Complaint for failure to state a claim upon which relief may be granted. Its broad definition of the accused products results in implausible infringement claims that should be dismissed under Fed. R. Civ. P. 12(b)(6).

Dated: October 14, 2013

Respectfully submitted,

By: s/ David E. De Lorenzi

David E. De Lorenzi
Charles H. Chevalier
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone No.: (973) 596-4500
Facsimile No.: (973) 596-0545

*Of counsel:*
John W. Kozak
David M. Airan
Leonard Z. Hua
**LEYDIG VOIT & MAYER**
Two Prudential Plaza
180 N. Stetson Avenue
Suite 4900
Chicago, IL 60601-6731
Telephone No.: 312-616-5600
Facsimile No.: 312-616-5700

*Attorneys for Defendant Molex Incorporated*

12

## CERTIFICATE OF SERVICE

I, **CHARLES H. CHEVALIER, HEREBY CERTIFY** that on October 14, 2013, I caused true and correct copies of **DEFENDANT MOLEX INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** to be served upon the following attorneys via CM ECF and electronic mail.

ANDREW P. NEMIROFF
COZEN O'CONNOR
277 PARK AVENUE
NEW YORK, NY 10172
(212) 883-4900
Fax: (212) 986-0604
Email: anemiroff@cozen.com
*Attorneys for Plaintiffs Bel Fuse*

**I FURTHER CERTIFY** that the foregoing statements by me are true. I am aware that if any of them are willfully false, I am subject to punishment.

By: s/ Charles H. Chevalier_____
Charles H. Chevalier

Dated: October 14, 2013
Newark, New Jersey